IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

KEITH HARDY, individually and on )
behalf of all other employees and )
former employees of Lewis Gale )
Medical Center, LLC )
similarly situated, et al., )
)
     Plaintiffs, )    Civil Action No. 7:18-cv-00218
v. )
) By: Elizabeth K. Dillon
LEWIS GALE MEDICAL )     United States District Judge
CENTER, LLC, )
)
    Defendant. )

**MEMORANDUM OPINION**

In this civil rights action, Plaintiffs bring suit individually and on behalf of all

similarly situated current and former employees of Lewis Gale Medical Center, LLC

("LGMC"), for racial discrimination and retaliation under Title VII of the Civil Rights

Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et seq*.; for racial discrimination and

retaliation under 42 U.S.C. §1981; for violation of the Fair Labor Standards Act

("FLSA"), 29 U.S.C. §§201, *et seq*., and for attorney's fees and costs pursuant to 42

U.S.C. § 1988. This matter is presently before the court on Defendant's Motion for

Judgment on the Pleadings and Motion to Strike Certain Portions of the Amended

Complaint (Dkt. No. 23), and Motion to Dismiss for Failure to State a Claim (Dkt. No.

27). Plaintiffs oppose LGMC's motions and request leave of court to file Second and

Third Amended Complaints. The court will grant LGMC's motion to dismiss and motion

for judgment on the pleadings in part, deny LGMC's motion to strike, and grant Plaintiffs' motion for leave to file second and third amended complaints.[1]

## I. BACKGROUND

### a. Title VII Claims

Plaintiffs are African-American and Latino/Hispanic male employees of the LGMC Security Department. Am. Compl. ¶¶ 5–10; Dkt. No. 2. Plaintiffs Hardy and Hendricks are security supervisors, and Bethel, Contreras, Finks, and Sanders are armed security officers. Id. ¶ 12. In December 2016, LGMC hired Barry Booth as Plaintiffs' supervisor, despite knowledge that Booth was placed on administrative leave from the Roanoke City Police Department in May 2015 for racially-charged remarks made on a social media post. Id. ¶ 14.

Plaintiffs allege that Booth treated them differently from white employees, including actions such as denying Plaintiffs opportunities for advancement, singling out Plaintiffs for unfair treatment, disciplining Plaintiffs more harshly than white employees, denying Plaintiffs the opportunity to become Special Conservators of the Peace ("SCOP"), falsely accusing Plaintiffs of misconduct, denying Plaintiffs' requests for Paid Time Off ("PTO"), giving white employees preferential treatment in scheduling, and failing to discipline white employees for refusing to wear their required uniforms. Id. ¶ 15. Plaintiffs allege that LGMC management was aware of Booth's discriminatory

---

[1] The Second and Third Amended Complaints add Plaintiffs Hardy, Finks, Contreras, Sanders, and Bethel as named plaintiffs in Counts I and III for Title VII discrimination and retaliation. Dkt. No. 33, 43. The Second and Third Amended Complaints do not alter the facts as set forth in the Amended Complaint. Dkt. No. 2. The remainder of this opinion will consider Plaintiffs' claims as set forth in the Second and Third Amended Complaints.

2

actions towards Plaintiffs; indeed, Plaintiffs complained to LGMC's management for months regarding Booth's actions. Id.

On February 5, 2018, Plaintiffs Hardy, Hendricks, Contreras, Finks, and Sanders filed charges of racial and national origin discrimination with the EEOC related to their complaints about Booth and LGMC. Id. ¶ 92. LGMC permitted Booth to resign on February 9, 2018. Id. ¶ 26. Shortly thereafter, LGMC announced that the Security Department would be outsourced in May 2018 to a company named G4S and that Plaintiffs' jobs were not guaranteed with G4S. Id. ¶ 95. However, LGMC promised that it would guarantee Plaintiffs' current pay for those hired by G4S. Id. Plaintiffs assert that LGMC management communicated false and negative information to G4S regarding employees Hardy, Hendricks, and Contreras, to prevent them from being hired as supervisors for G4S. Id. ¶ 101. Plaintiffs were hired as security officers with G4S on May 20, 2018, with significantly lower salaries than they received at LGMC. Id. ¶ 100.

### b. FLSA Claims

#### i. Rounding Time

Plaintiffs were hourly, non-exempt employees of the LGMC Security Department. Am. Compl. ¶¶ 12, 107, Dkt. No. 2. Plaintiffs assert that LGMC either required or strongly encouraged Plaintiffs to clock in seven minutes prior to the start of their shift but prohibited them from clocking in more than seven minutes before their shift. Id. ¶ 108. Plaintiffs were permitted to clock out within the seven minute period prior to the end of their shift if their replacement had already reported for duty. Id.¶ 108.

The LGMC Attendance and Tardiness policy permits a seven-minute grace period to clock in after the start of a shift without disciplinary action; however, LGMC

prohibited this practice and disciplined Security Department employees for clocking in after the start of their shift, including within a seven minute period. Id. ¶ 109.

Specifically, Barry Booth instructed Plaintiff Hendricks to give a verbal warning and then write up any employee who clocked in within the seven minute grace period after the start of his or her shift. Id. LGMC management endorsed this procedure by approving the disciplinary reports for Security Department employees who clocked in during the seven-minute grace period after their shift began. Id.

LGMC's time keeping system recorded the exact times all employees clocked in and out for each shift every day. Id.¶ 111. However, LGMC rounded Plaintiffs' work hours to the nearest quarter hour of time for purposes of compensation. Id.¶¶ 110, 112. Due to rounding, Plaintiffs were not compensated for the seven minutes prior to their shift each day that they were required to work. Id.¶ 113.

Plaintiffs allege that LGMC's policy of requiring them to clock in seven minutes prior to the start of their shifts—but not earlier than seven minutes—and disciplining them for clocking in after the start of their shifts, coupled with LGMC's policy of rounding Plaintiff's work time down to the nearest quarter hour, resulted in Plaintiffs not being compensated for work performed prior to their shift start time. Id.¶¶ 166, 167. Plaintiffs allege that LGMC willfully and illegally rounded employees' work time down to the nearest quarter of an hour, resulting in Plaintiffs being denied wages, including overtime premiums. Id.¶¶ 170, 171.

### ii.  Failure to Compensate

On March 15, 2018, LGMC announced that the Security Department was being outsourced to G4S, effective May 20, 2017. Id.¶ 95.  Plaintiffs were told that their jobs

4

were not guaranteed with G4S, and they would have to reapply with G4S to continue their employment. Id. Plaintiffs were required to attend five days of interviews, training and orientation with G4S to continue their employment as armed security officers in the Security Department at LGMC. Id.¶¶ 97, 115, 117. LGMC scheduled the training and orientation sessions, either alone or in conjunction with G4S, and directed the Plaintiffs to attend the training/orientation sessions on certain dates. Id.¶ 116. The training sessions were scheduled during Plaintiffs' LGMC work schedules and were directly related to Plaintiffs' jobs in the security department at LGMC. Id. ¶¶ 98, 119. Plaintiffs received minimum wage pay from G4S, a lower rate than their usual rate of pay, for four days of training. Id.¶ 120. Plaintiffs did not receive any compensation for one day of orientation with G4S. Id. Plaintiffs were not paid by LGMC for the training or orientation. Id. Several Plaintiffs were required to work double shifts and/or use PTO to attend the training and orientation sessions. Id. G4S hired Plaintiffs as security officers beginning May 20, 2018, with different pay and benefit structures from LGMC. Id. ¶ 100.

Plaintiffs allege that their attendance at the training and orientation sessions is considered employment by LGMC under FLSA and that LGMC did not fully compensate Plaintiffs for attendance at those sessions. Id.¶¶ 178, 180. Plaintiffs ask the court to award judgment for actual and compensatory damages in the amount due for unpaid minimum wages and overtime compensation with interest; liquidated damages for willful violations of the act; and attorney's fees and costs of suit. Id. Prayer for Relief ¶ B 3–5.

5

## II. STANDARD OF REVIEW

### c. Motion to Dismiss - Fed. R. Civ. P. 12(b)(1)

Subject matter jurisdiction is a threshold issue. Without a proper basis for subject matter jurisdiction, a case must be dismissed. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 96 (1998); Haley v. Va. Dep't of Health, No. 4:12-CV-00016, 2012 WL 5494306, at *2 (W.D. Va. Nov. 13, 2012) ("Federal district courts are courts of limited jurisdiction."). The plaintiff, who asserts jurisdiction, bears the burden of proving subject matter jurisdiction in response to a Rule 12(b)(1) motion. See Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995). In deciding whether jurisdiction exists the court may "consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999) (quoting Richmond, Fredericksburg & Potomac R. Co. v. U.S., 945 F.2d 765, 768 (4th Cir. 1991)) (internal quotation marks omitted).

### d. Motion to Dismiss - Fed. R. Civ. P. 12(b)(6)

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of Plaintiffs' complaint. See Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. Erickson v. Pardus, 551 U.S. 89, 94 (2007). The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (omission in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Legal

6

conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Twombly, 550 U.S. at 555 (requiring a complaint to contain facts sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face").

### e. **Motion for Judgment on the Pleadings - Fed. R. Civ. P. 12(c)**

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move for judgment on the pleadings. In reviewing a Rule 12(c) motion filed by a defendant, the court applies the same standard that would apply to a Rule 12(b)(6) motion to dismiss for failure to state a claim. PETA v. U.S. Dep't of Agric., 861 F.3d 502, 506 (4th Cir. 2017). Thus, I may grant the Defendant's Rule 12(c) motion only "if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." PETA, 861 F.3d at 506 (internal quotation marks omitted); see also Twombly, 550 U.S. at 555, 570 (requiring a complaint to contain facts sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face").

### f. **Motion to Strike - Fed. R. Civ. P. 12(f)**

Federal Rule of Civil Procedure Rule 12(f) permits the court to strike from a pleading any matter that is redundant, immaterial, impertinent, or scandalous. The function of a 12(f) motion to strike is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Gregory v. Belfor USA Grp., Inc., No. 2:12cv11, 2012 WL 2309054, at *1 (E.D. Va.

7

June 15, 2012) (quoting <u>Whittlestone, Inc. v. Handi-Craft Co.</u>, 618 F.3d 970, 973 (9th Cir. 2010). "The standard upon which a motion to strike is measured places a substantial burden on the moving party." <u>Cameron v. MTD Prods., Inc.</u>, No. Civ.A.5:03 CV 75, 2004 WL 3256003, at *2 (N.D.W. Va. Jan. 7, 2004). Usually a motion to strike requires a showing that denial of the motion would prejudice the moving party. <u>United States v. Gwinn</u>, No. 5:06–cv–00267, 2006 WL 3377636, at *1 (S.D.W. Va. Nov. 20, 2006). Moreover, "[a] motion to strike is a drastic remedy which is disfavored by the courts and infrequently granted." <u>Clark v. Milam</u>, 152 F.R.D. 66, 70 (S.D.W. Va. 1993).

Although Rule 12(f) motions are generally viewed with disfavor, <u>Waste Mgmt. Holdings, Inc. v. Gilmore</u>, 252 F.3d 316, 347 (4th Cir. 2001), they are proper where "the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." <u>Bailey v. Fairfax County</u>, No. 1:10–cv–1031, 2010 WL 5300874, *4 (E.D. Va. Dec. 21, 2010) (internal quotations omitted).

## III.  ANALYSIS

### a.  Untimely Motion to Dismiss Pursuant to Rule 12(b)(6)

As a threshold matter, Plaintiffs argue that LGMC's Motion to Dismiss should be denied as untimely because LGMC filed its Answer seven hours before filing its Rule 12(b) motions. <u>See</u> Dkt. Nos. 21, 23, & 27.  Indeed, LGMC filed its Answer on August 15 at 11:50 a.m., its Motion for Judgment on the Pleadings at 12:25 p.m., and the Motions to Dismiss at 6:50 p.m. <u>Id.</u>  Rule 12(b) motions must be filed prior to a responsive pleading if one is allowed. <u>See</u> Fed. R. Civ. P. 12(b) ("A motion pleading any of these defenses must be made before pleading if a responsive pleading is allowed.").

Plaintiff argues that because LGMC filed its Answer seven hours before its Rule 12(b) motions, the motions must be denied. <u>See</u> Pl.'s Opp'n to Def.'s Partial Mot. to Dismiss 10.

However, the court may construe an untimely Rule 12(b)(6) motion as a motion for judgment on the pleadings, and doing so does not change the legal standard. <u>See</u> <u>Burbach Broad. Co. of Del. v. Elkins Radio Corp.</u>, 278 F.3d 401, 405–06 (4th Cir. 2002) ("Because . . . the pleadings were closed at the time of the motion . . . . we construe the motion as one for judgment on the pleadings. However, the distinction is one without a difference, as we review the district court's decision to grant judgment on the pleadings *de novo,* applying the same standard for Rule 12(c) motions as for motions made pursuant to Rule 12(b)(6).") (citing <u>Edwards v. Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999)).

Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion is not waived at the close of pleadings. <u>Compare</u> Fed. R. Civ. P. 12(h)(1) <u>with</u> Fed. R. Civ. P. 12(h)(3). Therefore, because LGMC's 12(b)(6) motion may be construed as a motion for judgment on the pleadings under the same legal standard, and LGMC's 12(b)(1) motion was not untimely, the court will construe LGMC's Rule 12(b)(6) motion as a motion for judgment on the pleadings and allow it to proceed. <u>See</u> <u>Edwards</u>, 760 F. Supp. 2d at 614.

### b. **Motion to Dismiss Pursuant to Rule 12(b)(1)**

LGMC asserts that Plaintiffs' Title VII claims in Counts I (discrimination) and III (retaliation) should be dismissed for failure to exhaust administrative remedies, failure to state a claim, and lack of jurisdiction.

Before a plaintiff can file suit under Title VII, he must file a charge of discrimination with the EEOC and exhaust the administrative procedures set forth in 42 U.S.C. §2000e-5, including obtaining a Notice of Right-to-Sue from the EEOC. Requiring a party to first file a charge with the EEOC ensures that the employer is given notice of the alleged claims, allows the employer a chance to remedy the discrimination before litigation commences, and provides the parties recourse to resolution in a more efficient and less formal manner. Sydnor v. Fairfax County, Va., 681 F.3d 591, 593 (4th Cir. 2012). Failure to exhaust administrative remedies deprives a federal court of subject-matter jurisdiction over the claim. Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009).

#### i. **Failure to Receive a Right-to-Sue Letter**

LGMC asserts that several Plaintiffs have not yet received their right-to-sue letters from the EEOC, and, therefore, have not exhausted their administrative remedies prior to filing Title VII claims. Accepting the right-to-sue letters included in Plaintiffs' Second Amended Complaint (Dkt. No.33-1) and Third Amended Complaint (Dkt. No. 43-1), all plaintiffs have received their right-to-sue letters from the EEOC, and this issue is now moot.

#### ii. **Failure to Assert National Origin Discrimination**

LGMC asserts that Roderigo Contreras is the only plaintiff who filed a charge of

discrimination with the EEOC for national origin discrimination and requests that the court dismiss the remaining Plaintiffs' Title VII claims to the extent they assert national origin discrimination. In response, Plaintiffs agree that the remaining plaintiffs—Hardy, Hendricks, Bethel, Finks, and Sanders— have not and will not bring claims for national origin discrimination, but rather only assert claims based upon racial discrimination. Pl. Br. Opp. p. 14; Dkt. No. 35. Accordingly, only Plaintiff Contreras is proceeding with a claim for discrimination based upon national origin under Counts I and III of the Complaint.

### iii. <u>Premature Right-to-Sue Letters</u>

LGMC asserts that this court must dismiss the Title VII claims of Plaintiffs who received their right to sue letters from the EEOC in less than 180 days from the date they filed their charges with the EEOC. 42 U.S.C. § 2000e–5(f)(1) provides:

> If a charge filed with the Commission ... is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge ... the Commission has not filed a civil action ... or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge....

42 U.S.C. §2000e–5(f)(1). Congress delegated to the EEOC the authority to promulgate regulations to implement Title VII. <u>Stewart v. Iancu</u>, 912 F.3d 693, 698 (4th Cir. 2019). The EEOC promulgated a regulation which allows it to issue aggrieved persons right to sue letters "at any time prior to the expiration of 180 days from the date of filing the charge with the Commission; provided, that [an appropriate Commission official] has determined that it is probable that the Commission will be unable to complete its

administrative processing of the charge within 180 days from the filing of the charge." 29 C.F.R. § 1601.28(a)(2).

LGMC argues that 29 C.F.R. § 1601.28(a)(2), the EEOC's early right-to-sue regulation, violates the 180 day waiting period for private suits established by section 2000e–5(f)(1) and thus exceeds the EEOC's statutory authority and is invalid. See Mem. in Supp. of Def.'s Partial Mot. to Dismiss, Dkt. No. 28, 11–12. Plaintiffs disagree, arguing that the EEOC's regulation authorizing issuance of an early right-to-sue letter is not contrary to law. See Opp. to Def.'s Partial Mot. to Dismiss, Dkt. No. 35, p. 13.  This argument has been raised in other Circuits, which are split on the issue, and the Fourth Circuit has yet to address it. See, e.g., Walker v. United Parcel Serv., 240 F.3d 1268, 1275 (10th Cir. 2001) (disagreeing with Martini, infra, and upholding the regulation); Martini v. Fed. Nat. Mortg. Ass'n, 178 F.3d 1336, 1347 (D.D.C. 1999) (invalidating the EEOC's regulation); Sims v. Trus Joint MacMillan, 22 F.3d 1059, 1063 (11th Cir. 1994) (upholding the EEOC's regulation); Brown v. Puget Sound Elec. Apprenticeship & Training Tr., 732 F.2d. 726, 729 (9th Cir. 1984) (upholding the EEOC's regulation). The court agrees with LGMC and finds that the EEOC's regulation is invalid and the Title VII claims of those Plaintiffs who received right-to-sue letters from the EEOC in fewer than 180 days must be remanded to the EEOC for further administrative proceedings.

"When a challenger asserts that an agency action conflicts with the language of a statute, we generally apply the two-step analytical framework set forth in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842–43 (1984)." Sierra Club v. U.S. Army Corps of Eng'rs, 909 F.3d. 635, 643 (4th Cir. 2018).  First, a court "looks to the 'plain meaning' of the statute to determine if the regulation responds

12

to it." King v. Burwell, 759 F.3d 358, 367 (4th Cir. 2014), aff'd, 135 S. Ct. 2480 (2015) (quoting Chevron, 467 U.S. at 842–43). If "Congress has directly spoken to the precise question at issue" and "the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron, at 842–43. If the statute is ambiguous, courts then move to Chevron's second step and defer to the agency's interpretation so long as it is based on a permissible construction of the statute. Id. at 843. Here, the court joins the courts that have considered the matter and found that Congress' intent in §2000e–5 is clear, "the EEOC has control over charges of discrimination for 180 days, and not a day less." Taylor v. Cardiology Clinic, Inc., No. 4:14-cv-46, 2015 WL 770439, at * 3 (W.D. Va. Feb. 24, 2015) (J. Kiser) (collecting cases); but see West v. Merillat Indus., 92 F. Supp. 2d 558, 560–61 (W.D. Va. 2002) (J. Jones).

Chevron's first step asks courts to consider whether the agency's organic statute is ambiguous. 467 U.S. at 842–43. The relevant statutory sections in this case are § 2000e-5(b) and (f)(1). Section 2000e-5(b) states that "[w]henever a charge is filed by . . . a person claiming to be aggrieved . . . the Commission . . . *shall* make an investigation thereof." 42 U.S.C. § 2000e-5(b) (emphasis added). The EEOC's duty to investigate is thus mandatory. See Sierra Club, 909 F.3d. at 645 ("'Shall' is an unambiguously mandatory term…"); Martini, 178 F.3d at 1346 ("Thus . . . the Commission's duty to investigate is both mandatory and unqualified").

Section 2000e-5(f)(1) provides the EEOC with two options when it has investigated a charge but not reached a conciliation agreement or decided to sue; it may either dismiss the charge, or, after 180 days, it must notify the person aggrieved so he or

13

she may initiate a lawsuit. Read together, these sections require the EEOC to investigate a charge and dispose of it in one of the four ways listed in § 2000e-5(f)(1): conciliation, filing suit on behalf of the aggrieved person, dismissing the charge, or, if none of these actions are taken within the 180 day period, notifying the aggrieved person of his or her right to sue. When § 2000e–5(f)(1) is read in conjunction with § 2000e–5(b), it is clear that Congress intended for the EEOC to have control over charges of discrimination for 180 days and that a cause of action based on those charges may not be brought before the expiration of that time. The EEOC's regulation at issue adds a fifth option, allowing it to issue a notice of right to sue earlier than 180 days, upon a determination that it will be unable to complete the charge's processing within that period. See 29 C.F.R. § 1601.28(a)(2). Because Congress' intent is clear, the EEOC is not permitted to alter this framework through its rule-making authority.

In Martini v. Federal National Mortgage Association, 178 F.3d 1336, 1347 (D.C. Cir. 1999), the court applied the Chevron analysis and interpreted the 180–day period in 42 U.S.C. § 2000e–5(f)(1) to be a mandatory waiting period. Observing that Congress had imposed a "mandatory and unqualified" duty on the EEOC to investigate charges and that the legislative history indicated that Congress "hoped that recourse to ... private lawsuit will be the exception and not the rule," the court concluded that the EEOC's power to authorize private suits within 180 days would undermine both its statutory investigatory duty and Congress' policy of encouraging informal "resolution up to the 180th day." Id. at 1346–47 (quoting 118 Cong. Rec. 7168). The court rejected a suggestion of futility based upon the EEOC's lack of resources and found no equitable considerations warranting an exception to the 180–day requirement. Id. at 1348.

Conversely, the circuit court decisions upholding the EEOC's regulation either do not engage in a Chevron analysis or conclude that the statute is ambiguous in the first step and focus on the reasonableness of the EEOC's interpretation in the second step. See, e.g., Walker, 240 F.3d at 1274–75 (finding § 2000e-5(f)(1) ambiguous and distinguishing Martini); Brown, 732 F.2d at 729 (upholding the regulation, but decided before the Chevron decision). Rather than relying upon the plain text of 42 U.S.C. § 2000e-5, the courts upholding the regulation focus on its legislative history, which contains evidence both for and against an interpretation allowing the early right to sue regulation. See Walker, 240 F.3d at 1274–76 (examining § 2000e-5's legislative history); Martini, 178 F.3d at 1345 (noting the ambiguity in § 2000e-5's legislative history); Sims, 22 F.3d at 1062–63 (interpreting § 2000e-5's legislative history to support the fast resolution of complaints, including through the issuance of early right to sue notices).

Specifically, in Brown, the Ninth Circuit upheld 29 C.F.R. § 1601.28(a)(2) one month before the Chevron decision. See 732 F.2d at 729. In two paragraphs, the Brown court decided to uphold the regulation based on a prior decision, where it found nothing in the statute prohibiting the EEOC from issuing early right to sue notices. See id. (citing Bryant v. Cal. Brewers Ass'n, 585 F.2d 421, 425 (9th Cir. 1978) (considering fast resolution of complaints to be a convincing policy rationale for allowing early right to sue notices absent a statutory prohibition), vacated and remanded on other grounds).

In Sims v. Trus Joist MacMillan, the Eleventh Circuit upheld the early right to sue regulation without any reference to Chevron, instead stating that "the EEOC's interpretation of Title VII 'need only be reasonable to be entitled to deference.'" 22 F.3d at 1060–61 (quoting EEOC v. Commercial Office Prod. Co., 486 U.S. 107, 115 (1988)).

This standard reflects <u>Chevron's</u> second step, but ignores its first. The court examined policy arguments and found that they supported a conclusion that the EEOC's regulation was a reasonable interpretation of the statute, which did not conflict with §2000e–5(f)(1). See <u>id.</u> at 1061–63.

The Tenth Circuit's analysis is the most persuasive of the courts upholding the EEOC regulation. In <u>Walker v. United Parcel Serv., Inc.</u> the Tenth Circuit conducted a full two-step <u>Chevron</u> analysis, considering and refuting the D.C. Circuit's reasoning in <u>Martini</u>. See 240 F.3d at 1273–77. In disagreeing with <u>Martini</u>, the Court found that the conflict between § 2000e-5(f)(1) and (b) created an ambiguity that its legislative history could not clarify. See <u>id.</u> at 1274–75 (disagreeing with <u>Martini</u> as to whether § 2000e–5 is ambiguous). The Court held that "Congress' 1972 amendment to Section 2000e-5(f)(1) to allow aggrieved parties to file civil actions if the EEOC failed to act on a charge for 180 days itself created an obvious tension with . . . Section 2000e-5(b)." <u>Id.</u> at 1275. The court then found that the EEOC's regulation was a reasonable interpretation of that ambiguity. See <u>id.</u> at 1275–77 (upholding the EEOC's regulation).

While the court acknowledges the tension between the allowance of a claimant to proceed if the EEOC fails to act on a charge for 180 days as set forth in § 2000e–5(f)(1) and the mandate that the EEOC "shall" investigate as set forth in §2000e–5(b), the court does not find that it results in an ambiguity in the statute. Section 2000e-5(b) and (f)(1) can be read together to an unambiguous result: Congress intended the EEOC to investigate every charge, but acknowledged the potential for charges to become lost or dormant in the agency's backlog, leaving aggrieved persons without a swift remedy. As a result, it later amended the statute to create a 180-day "safety-valve" through which

16

aggrieved persons can prosecute their claims should the EEOC be unable to do so. Read this way, there is no ambiguity and the EEOC's reasonableness in promulgating the regulation should not be considered. As explained above, when read together, §§ 2000e-5 and (b) and (f)(1) leave the EEOC with only four ways to dispose of a charge while fulfilling its statutory duty to investigate it: conciliation, suit, dismissal, or inaction for 180 days.

Further, though it may be argued that there is no practical difference between dismissing a charge before 180 days—an action explicitly allowed in the statute—and issuing an early right to sue notice under the regulation, the two are not the same, especially not in this case. While the EEOC may dismiss a charge early, it still must investigate that charge. On the other hand, 29 C.F.R. § 1601.28(a)(2) says nothing about ending an investigation early because the charge appears to be unfounded. Instead, it allows the EEOC to forgo its statutory duty to investigate when it finds that it is "probable that the Commission will be unable to complete its administrative processing of the charge . . . ." 29 C.F.R. § 1601.28(a)(2). This allows for situations where the EEOC never begins an investigation, instead issuing a right to sue notice at the aggrieved person's request, sometimes only days after the charge is filed.[2] The key question is whether the EEOC makes some sort of investigation as required by the statute. The EEOC regulation impermissibly allows the Commission to sidestep this requirement.

---

[2] For example, on April 13, 2018, Plaintiff Hendricks filed a charge with the EEOC alleging retaliation. Dkt. No. 28-6. *That same day*, April 13, 2018, the EEOC terminated its processing of the case in fewer than 180 days, noting that it was unlikely that the EEOC would be able to complete its administrative processing within 180 days from the filing of the charge. Dkt. No. 28-7.

17

Therefore, the court finds EEOC regulation 29 C.F.R. § 1601.28(a)(2) to be an improper exercise of authority and invalid.

Here, Plaintiffs Hardy, Finks, Hendricks II, Sanders II, and Bethel received right-to-sue letters from the EEOC before the passage of 180 days.[3] Accordingly, their Title VII claims are **DISMISSED** from this action and remanded to the EEOC for proper

---

[3]    Plaintiff Sanders filed a charge of discrimination on April 3, 2018 ("Sanders I") (Dkt. No. 28-14). He received a right to sue letter on April 5, 2018, noting that the EEOC was dismissing his charge because it was unable to conclude that the information obtained establishes violations of the statutes. Dkt. No. 28-15.

Plaintiff Sanders received a second right to sue letter on October 24, 2018 ("Sanders II"), which Plaintiffs allege is in response to his charge of retaliation, noting that the EEOC terminated its processing of the case in fewer than 180 days because it was unlikely that the EEOC would be able to complete its administrative processing within 180 days from the filing of the charge. Dkt. No. 43-1.

Plaintiff Contreras filed a charge on February 5, 2018. Dkt. No. 28-9.  He received a right to sue letter after his case was terminated by the EEOC after 180 days. Dkt. No. 35-2.

Plaintiff Hendricks filed a charge of discrimination and retaliation on February 5, 2018, based upon race beginning in October 1, 2017 ("Hendricks I").  Dkt. No. 28-4. The EEOC issued a determination on February 13, 2018, finding that the information obtained did not establish any violations of the statutes. Dkt. No. 28-5.

Plaintiff Hendricks filed a second charge on April 13, 2018 ("Hendricks II"), alleging retaliation beginning on February 8, 2018. Dkt. No. 28-6.  The same day, April 13, 2018, the EEOC terminated its processing of the case in fewer than 180 days, noting that it was unlikely that the EEOC would be able to complete its administrative processing within 180 days from the filing of the charge. Dkt. No. 28-7.

Plaintiff Finks filed his charge with the EEOC on March 12, 2018 (Dkt. No. 28-11), and received a right to sue letter on July 31, 2018, noting that the EEOC terminated its processing of the case in fewer than 180 days because it was unlikely that the EEOC would be able to complete its administrative processing within 180 days from the filing of the charge. Dkt. No. 28-13.

Plaintiff Hardy filed a charge on February 5, 2018. Dkt. No. 28-1.  He received a right to sue letter from the EEOC on August 2, 2018, noting that the EEOC terminated its processing of the case in fewer than 180 days because it was unlikely that the EEOC would be able to complete its administrative processing within 180 days from the filing of the charge. Dkt. No. 28-3.

Plaintiff Bethel filed a charge on June 18, 2018. Dkt. No. 28-8. Bethel received a right to sue letter from the EEOC on October 1, 2018, noting that the EEOC terminated its processing of the case in fewer than 180 days because it was unlikely that the EEOC would be able to complete its administrative processing within 180 days from the filing of the charge. Dkt. No. 43-1.

resolution as required by statute. The Title VII claims of Plaintiffs Sanders I, Contreras and Hendricks I remain.[4]

### iv. Allegations Exceed Scope of EEOC Charges

LGMC argues that some of Plaintiffs' claims in the Amended Complaint should be struck because they exceed the scope of the EEOC charges. See Mem. in Supp. of Def.'s Partial Mot. to Dismiss 13–17.  The goals behind administrative exhaustion, *e.g.*, ensuring that an employer is given notice of alleged claims, allowing an employer to remedy the discrimination before commencing litigation, and providing more efficient and less formal resolution, would be undermined if a plaintiff could raise claims in litigation that did not appear in his or her EEOC charge. See Sydnor, 681 F.3d at 593. "To prevent such gamesmanship, we have held that the 'scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents.'" Id. (quoting Jones, 551 F.3d at 300). However, the Fourth Circuit recently affirmed the "generally accepted principle" that the "scope of a Title VII lawsuit may extend to 'any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case' before the agency." Stewart v. Iancu, 912 F.3d 693, 705 (4th Cir. 2019).

The Fourth Circuit has held that exhaustion is not satisfied where the administrative charges "reference different time frames, actors, and discriminatory conduct" from the complaint and where the charge alleges one type of discrimination

---

[4]  "Filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). Thus, the EEOC's early termination of its investigation does not deprive this Court of jurisdiction; however, finding no basis upon which to excuse the EEOC's compliance with the statute, these charges are remanded to the EEOC.

19

(race) but the complaint alleges either multiple types or different types (race and sex).

Sydnor, 681 F.3d at 593. However, EEOC charges must be construed broadly, and claims reasonably related to the charges should not be struck. See Smith, 202 F.3d at 247 ("If a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit."); Alvarado v. Bd. of Tr. of Montgomery Cmty. Coll., 848 F.2d 457, 460 (4th Cir. 1988) ("EEOC charges must be construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading.") (citation omitted). "An administrative charge of discrimination does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002).

Defendant argues that the Title VII discrimination claim in the Complaint asserts actions of discrimination against all of the Plaintiffs, many of which were not specifically set forth in each Plaintiff's EEOC charge. For example, the Complaint states,

> Plaintiffs were denied employment and advancement opportunities, disciplined more harshly, denied promotions, forced to work less desirable shifts, refused status as Special Conservators of the Peace, denied paid time off, unfairly accused of misconduct, stripped of responsibilities, retaliated against, and paid lower wages, because of their race and/or national origin, contrary to similarly situated white employees.

Am. Compl. ¶¶ 126.

Defendant notes that the EEOC charges for Plaintiffs Saunders I, Contreras, and Hendricks I include only some of these specific actions. Defendant asks the court to

focus the litigation by eliminating claims in the Complaint that were not specifically addressed in the EEOC charges.

Plaintiffs assert that their EEOC charges were more than sufficient to put LGMC on notice of their discrimination and retaliation claims. Plaintiffs note that they are not required to list every discriminatory act that occurred in their EEOC charges but are only required to put the employer on notice and give the EEOC enough information to perform an investigation. Further, Plaintiffs assert that the specific allegations in the Complaint set forth examples of discriminatory conduct that occurred to the different Plaintiffs over time.

The court finds that the Title VII discrimination and retaliation claims of Contreras and discrimination claims of Sanders I and Hendricks I are reasonably related to their EEOC charges and fall within the scope of a potential administrative investigation related to the charges. While the specific allegations of discrimination in the Complaint may not be contained in each Plaintiff's EEOC charge, the allegations involve the same type of discrimination (race and/or national origin), the same source of discrimination (Booth and LGMC), the same department (Security), the same time period of discriminatory conduct, and the same foundational facts.

For example, LGMC seeks to strike Contreras' claims that he was "denied employment or advancement opportunities or promotions, was forced to work less desirable shifts, was refused status as a SCOP, denied PTO, or paid lower wages." Dkt. No. 28, p. 14. Contreras' EEOC charge stated that he was discriminated against because of his race, and, specifically, that he was "harassed in the form of disciplinary actions for infractions that are not true or not a violation of any policy," "was removed from a

special assignment." Contreras stated in his charge, "I believe I was denied an assignment, harassed and disciplined because of my race (Latino) and National Origin (Hispanic) in violation of Title VII of the Civil Rights Act of 1964, as amended." Dkt. No. 28-9. These claims are within the scope of a potential EEOC investigation. The court finds that the list of discriminatory actions in the Complaint would be revealed by a reasonable EEOC investigation of Plaintiffs' charges. Accordingly, LGMC's motion to dismiss Plaintiffs' claims on the grounds of exceeding the scope of the EEOC charges is **DENIED**.

### c. <u>Motion to Dismiss Pursuant to Rule 12(b)(6)</u>[5]

#### i. <u>Claims Barred by Statute of Limitations</u>

A claimant filing a Title VII claim in Virginia must file an EEOC charge within 300 days of the alleged discriminatory action. <u>See</u> <u>Edwards v. Murphy-Brown, L.L.C.</u>, 760 F. Supp. 2d 607, 619 ("[A]n employee challenging an employment practice . . . in Virginia has 300 days from the last date of alleged discrimination to file a charge with the EEOC."). LGMC argues that some of the conduct alleged in Plaintiffs' claims occurred prior to the 300-day statute of limitations. <u>See</u> Mem. in Supp. of Def.'s Partial Mot. to Dismiss, Dkt. No. 28, pp. 17–19. Specifically, LGMC notes that Plaintiff Contreras filed his charge on February 5, 2018, and claims discrimination as early as December 1, 2016. <u>Id.</u> at p. 18. LGMC also asserts that Plaintiff Sanders cannot recover for discrete acts of discrimination prior to June 7, 2017, because his charged was filed with the EEOC on

---

[5] As noted previously, the court will construe LGMC's Motion to Dismiss under Rule 12(b)(6) as a motion for judgment on the pleadings, which has the same legal standard. <u>See</u> <u>Edwards</u>, 760 F. Supp. 2d at 614.

April 3, 2018. Id. Plaintiffs respond that discrimination which is continuing in nature and occurred beyond the 300-day date may still be considered for liability purposes.

"If one act in a continuous history of discriminatory conduct falls within the charge filing period, then acts that are plausibly or sufficiently related to that act which fall outside the filing period may be considered for purposes of liability even though these acts cannot serve as the basis for an EEOC charge." Lewis v. Norfolk S. Corp., 271 F. Supp. 2d 807, 812 (E.D. Va. 2003) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002)). However, the Supreme Court in Nat'l R.R. Passenger Corp. ruled that the continuing violation doctrine does not apply to "[d]iscrete acts such as termination [or] failure to promote . . . [that] are easy to identify." 536 U.S. at 114. Here, to the extent Plaintiffs' claims that fall outside of the 300 day requirement are discrete acts such as termination or failure to promote and are thus, "easy to identify," they should be dismissed.  See Jenkins v. Home Ins. Co., 635 F.2d 310, 312 (4th Cir. 1980) (finding that unequal pay constituted a continuing violation).

Reviewing the Amended Complaint, the discrete acts of discrimination and retaliation alleged by Plaintiffs Hendricks I and Sanders I occurred during the 300 day limitations period, which began on April 11, 2017 (Hendricks I), and June 7, 2017 (Sanders I), and are not time barred. See Am. Compl.  ¶¶ 20–24, 47–66.  The dates of Plaintiff Contreras' allegations of discrimination are unclear in the Complaint; to the extent any discrete actions alleged by Contreras occurred prior to April 11, 2017, they are time barred. See Am. Compl. ¶¶ 71–78.

23

**d.  Motion for Partial Judgment on the Pleadings- Fed. R. Civ. P. 12(c)**

LGMC asks the court to dismiss Plaintiffs' FLSA claims with prejudice, arguing that its policies for rounding time and the manner in which it compensated Plaintiffs for training and orientation do not violate the FLSA.  The FLSA requires that a covered employee who works more than 40 hours a week receive compensation for excess time worked "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1042 (2016).  There is no dispute that LGMC is an employer subject to the provisions of the FLSA or that Plaintiffs are hourly, non-exempt employees entitled to minimum wages and overtime compensation for any hours worked over 40 per week.

### i.  Rounding Time

The U.S. Department of Labor adopted a regulation that generally allows rounding practices. 29 C.F.R. § 785.48(b) permits employers to round time to the nearest quarter of an hour, provided that the arrangement averages out so that the employees are fully compensated for the time they actually work. The regulation provides that such a rounding practice will be accepted, "provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." Id.  District courts regularly uphold the validity of employers' neutral rounding practices. See Corbin v. Time Warner Entm't-Advance Newhouse P'ship, 821 F.3d 1069, 1076 (9th Cir. 2015) (collecting cases).

"Rounding policies may be permissible if they, 'on average, favor neither overpayment nor underpayment.'" Mendez v. H.J. Heinz Co., No. CV 12-5652-GHK, 2012 WL 12888526 (C.D. Cal. Nov. 13, 2012) (quoting Alonzo v. Maximus, Inc., 832 F.

Supp. 2d 1122, 1126 (C.D. Cal. 2011). "If an employer's rounding practice does not permit both upward and downward rounding, then the system is not neutral and 'will…result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.'" Corbin at 1077 (quoting 29 C.F.R. §785.48(b)).

Plaintiffs allege that LGMC's policy of requiring employees to clock in seven minutes prior to the start of their shifts, but not earlier than seven minutes, and disciplining them for clocking in after the start of their shifts, coupled with LGMC's policy of rounding work time up or down to the nearest quarter hour resulted in an overall detriment to employees. Am. Compl. ¶¶ 166, 167, Dkt. No. 2. LGMC asserts that its rounding and disciplinary policies are facially neutral and, when applied, benefit employees; thus, the policies do not violate the FLSA. Dkt. No. 24, pp. 5–6.

Courts have found that an employer's rounding practices comply with § 785.48(b) if the employer applies a consistent rounding policy that, on average, favors neither overpayment nor underpayment. See Boone v. Primeflight Aviation Servs., Inc., No. 15-CV-6077, 2018 WL 1189338, at *7 (E.D.N.Y. Feb. 20, 2018) (collecting cases). Here, LGMC's rounding policy is facially neutral because all employee time punches are rounded to the nearest quarter-hour "without an eye towards whether the employer or the employee was[s] benefiting from the rounding." Corbin at 1079. However, LGMC's disciplinary policy requiring employees to clock in seven minutes prior to a shift, disciplining employees for clocking in after a shift, and allowing, but not guaranteeing, employees the right to clock out seven minutes prior to the end of their shift may create an inequity in the rounding policy when applied. See Chao v. Self Pride, Inc., No. RDB 03-3409, 2005 WL 1400740, at *6 (D. Md. June 14, 2005) (finding a FLSA violation

where employer rounded down employees' time without any evidence that the rounding practice averaged out to fully compensate employees for the time worked).

In <u>Austin v. Amazon.com, Inc.</u>, No. C09-1679JLR, 2010 WL 1875811, *1–2 (W.D. Wash. May 10, 2010), the court found that Plaintiff stated an FLSA claim where Amazon's policy allowed employees to clock in seven minutes or less before their scheduled shift and were paid from their scheduled start time going forward, but if they clocked in more than three minutes past their scheduled start time, Amazon would "flag" that employee for discipline. The court found that 29 C.F.R. § 785.48(b) "does not contemplate the situation where an employer allows rounding when it benefits the employer without disciplining the employee; but disciplines the employee when the rounding does not work to the employer's advantage." <u>Id.</u> at *3. LGMC likewise allows employees to clock in seven minute or less before their shift, but it disciplines them for clocking in seven minutes or less after their shift. However, LGMC 's policies differ from <u>Amazon</u> in that LGMC permits employees to clock out up to seven minutes early, if the employee's replacement has arrived.

In <u>Mendez v. H.J. Heinz Co</u>, the court found the plaintiff's allegations of an employer's policy of rounding time, together with a disciplinary policy that incentivizes employees to arrive at work early, was insufficient to state a claim under the FLSA. The employer's policy handbook showed that "[c]locking in 6 minutes or more late," or "[c]locking out early 1 minute or more" subjects the employees to discipline. 2012 WL 12888526 at *1. The court noted that a disciplinary policy that incentivizes employees to arrive at work early along with a rounding policy of rounding time down for seven minutes and below, and up for eight minutes and above, could still lead to a neutral

26

outcome. Id. at *3. The court stated, "[p]laintiff must not only allege what the rounding policy is, but also additional facts that would plausibly suggest that the policy results in a systematic underpayment of wages." Id.

Likewise, in Boone v. Primeflight Aviation Services, Inc., the court found no FLSA violation where the employer's time system rounded time both up and down by seven minutes, to the nearest quarter hour. 2018 WL 1189338 at *12. The Boone court distinguished the Amazon decision because there was no evidence presented by Plaintiff of a disciplinary policy for employees who clocked in late. Id.

Additionally, in Corbin and Boone, the courts noted that federal regulations do not require that rounding policies result in every employee gaining or breaking even in every pay period. See Corbin, 821 F.3d at 1077; Boone, 20185 WL 1189338, at *9. "If the rounding policy was meant to be applied to each employee to ensure that no employee ever lost a single cent over a pay period, the regulation would have said as much." Corbin, 821 F.3d at 1077. "Employers use rounding policies to calculate wages efficiently; sometimes, in any given pay period, employees come out ahead and sometimes they come out behind, but the policy is meant to average out *in the long-term*." Id. (emphasis in original).

Here, the facts as alleged by Plaintiffs establish that employees were encouraged to clock in seven minutes prior to their shift, were disciplined for clocking in after their shift, and were permitted to clock out seven minutes prior to the end of their shift, if their replacement had arrived. It is possible that this policy could benefit the employer if an employee regularly clocked in seven minutes before a shift and did not clock out seven minutes before the end of the shift. Conversely, the policy could favor an employee if the

27

employee regularly clocked in at the start of a shift and clocked out seven minutes early each day. The policy could tend to favor either the employees or employer over time, depending on the specific facts and circumstances for each employee.

Thus, accepting all well-pleaded allegations in the Complaint as true and drawing all reasonable factual inferences from those facts in the Plaintiffs' favor, the court finds that Plaintiffs could prove a violation under the FLSA with regard to LGMC's rounding and disciplinary policies; accordingly, LGMC's motion for judgment on the pleadings as to this claim is **DENIED**.

### ii. Failure to Compensate

Plaintiffs allege that their attendance at G4S training and orientation sessions is considered employment by LGMC under the FLSA, and LGMC did not fully compensate Plaintiffs for attendance at those sessions. Id.¶¶ 178, 180. Specifically, Plaintiffs allege that: 1) they were not compensated by either G4S or LGMC for attending one day of orientation; 2) they were not compensated for travel time to G4S training and orientation; 3) they were not paid their regular LGMC wages for the training and orientation sessions; and 4) they had to work double shifts at LGMC to make up time they spent in training sessions and/or use paid time off to attend the training/orientation sessions. LGMC asserts that it is entitled to judgment as a matter of law on this claim.

Plaintiffs' allegations are sufficient to raise a factual issue as to whether LGMC and G4S were joint employers for purposes of the trainings and orientation at issue. LGMC asserts that it is a different entity from G4S and there is no allegation to the contrary by Plaintiffs. Dkt. No. 24, p. 6. Rather, Plaintiffs appear to assert that LGMC and G4S were "joint employers" for the time period when Plaintiffs were employees of

28

LGMC but were required to attend training and orientation for their new positions at G4S. "Separate persons or entities that share control over an individual worker may be deemed joint employers. . . ." <u>Schultz v. Capital Int'l. Sec., Inc.</u>, 466 F.3d 298, 305 (4th Cir. 2006). "[I]f the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the [FLSA]." 29 C.F.R. § 791.2(a). Both joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the FLSA. <u>Id.</u>; <u>Schultz</u>, 466 F.3d at 305.

Job-related trainings are generally compensable under the FLSA. "Time spent attending employer-sponsored lectures, meetings, and training programs is generally considered compensable." <u>Chao v. Tradesmen Intern., Inc.</u>, 310 F.3d 904, 907 (6th Cir. 2002). "The FLSA requires that employers pay employees the minimum hourly wage 'for all hours worked.'" <u>Harbourt v. PPE Casino Resorts Md., LLC</u>, 820 F.3d 655, 658 (4th Cir. 2016) (quoting <u>Perez v. Mountaire Farms, Inc.</u>, 650 F.3d 350, 363 (4th Cir. 2011) (internal quotation marks omitted). "'[W]ork' for FLSA purposes broadly encompasses 'physical or mental exertion (whether burdensome or not) controlled or required by the employer' primarily for its benefit. And 'training' can constitute 'work' under the statute." <u>Harbourt</u>, 820 F.3d at 660 (internal citations omitted).

While time spent in training is generally compensable, time traveling to training is not. <u>See</u> <u>Chao</u>, 310 F.3d at 907 ("The Portal–to–Portal Act also excludes from compensation 'walking, riding, or traveling to and from the actual place of performance

of the principal activity or activities which such employee is employed to perform.'") (citing 29 U.S.C.A. § 254(a)(1) (West 1998)); Imada v. City of Hercules, 138 F.3d 1294, 1297 (9th Cir. 1998) (police officers' travel to remote site for three-day training program not compensable, since it was a normal, contemplated and indeed mandated incident of their employment, even though it occurred infrequently).

Plaintiffs allege that they were not paid by either LGMC or G4S for one day of mandatory orientation. Thus, Plaintiffs' FLSA claim shall proceed as to the one day of orientation for which Plaintiffs allege they were not compensated.

However, the FLSA does not require LGMC to further compensate Plaintiffs for the trainings for which Plaintiffs were compensated by G4S at minimum wage, or to provide compensation at a higher rate. "The FLSA requires that employers pay employees the minimum hourly wage 'for all hours worked.'" Harbourt, 820 F.3d at 658 (quoting Perez v. Mountaire Farms, Inc., 650 F.3d at 363 (internal quotation marks omitted)). There is no duty under FLSA that Plaintiffs be compensated for that time by both LGMC and G4S, or at the higher rate paid by LGMC.

LGMC also correctly notes that despite alleging that Plaintiffs had to use paid time off or work double shifts to attend the training, Plaintiffs do not specifically allege that any employee worked an excess of 40 hours in the weeks during which they attended the training. However, because Plaintiffs allege that LGMC and G4S were joint employers during the training and orientation time period, Plaintiffs' allegations of working paid time off and double shifts for LGMC so they could to attend G4S trainings sufficiently states a plausible claim for relief under the FLSA. "To be sure, the joint employment doctrine serves to 'preserve[ ] ... [FLSA] protection so as to prevent such

abuses as manipulation of job scheduling or rotation of workers to circumvent overtime requirements.'" <u>Salinas v. Comm. Interiors, Inc.</u>, 848 F.3d 125 (4th Cir. 2017) (citing H. Rep. No. 99–331, at 23–25). Accordingly, Plaintiffs' FLSA claim may proceed as to the one day of training for which Plaintiffs allege they were not compensated, and Plaintiffs' claim that they worked paid time off and double shifts for LGMC to attend G4S trainings. All other FLSA claims relating to LGMC's failure to compensate Plaintiffs are **DISMISSED**.

### a. Motion to Strike- Fed. R. Civ. P. 12(f)

#### i. Compensatory Damages

LGMC asks the court to strike Plaintiffs' request for compensatory damages in relation to the FLSA claim, asserting that the FLSA does not provide recovery for compensatory damages such as pain and suffering. Dkt. No. 24, pp. 7–8. Plaintiffs assert that their request for compensatory damages is proper because they are not claiming emotional distress but rather unpaid wages and overtime, which is recoverable under the FLSA. Dkt. No. 34, p. 9.

The FLSA allows covered employees to sue for "their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "This provision for liquidated damages is an additional penalty on non-compliant employers…. As a potential defense to liquidated damages, however, employers may seek to show that they acted in 'good faith' and 'had reasonable grounds for believing that [their] act or omission was not a violation of the [FLSA].'" <u>McFeeley v. Jackson St. Entm't, LLC</u>, 825 F.3d 235, 245 (4th Cir. 2016) (quoting 29 U.S.C. § 260).

Case 7:18-cv-00218-EKD   Document 49   Filed 03/19/19   Page 31 of 33   Pageid#: 495

Plaintiffs note that courts often refer to unpaid wages and overtime due under FLSA as "compensatory damages." See, e.g., Calderon v. GEICO General Ins. Co., 809 F.3d 111, 131 (4th Cir. 2015). LGMC does not disagree with this characterization but alleges that allowing the term "compensatory damages" to remain in Plaintiffs complaint risks forcing LGMC to manage discovery and trial evidence relating to emotional damages.

LGMC's motion to strike the phrase "compensatory damages" from the Complaint is **DENIED**; however, Plaintiffs' request for "compensatory" damages in this case is a request for unpaid wages and overtime as permitted by the FLSA.

### ii. Willfulness

LGMC also requests that the court strike Plaintiffs' allegations that LGMC willfully violated the FLSA. Dkt. No. 24, p. 8. LGMC asserts that no facts in the (Complaint support an allegation that LGMC violated the FLSA with knowledge or reckless disregard. Plaintiffs assert that LGMC's motion to strike willfulness should be denied because it must be raised as an affirmative defense of statute of limitations in the responsive pleading, and, further, because Plaintiffs are not required to allege specific facts regarding willfulness at the motion to dismiss stage. Dkt. No. 34, pp. 10–11.

"[O]nly those employers who 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]' have willfully violated the statute." Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351, 358 (4th Cir. 2011) (quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)). Negligent conduct is insufficient to show willfulness. Id. The employee bears the burden of proof

32

when alleging a violation is willful, and the question of whether an employer acted willfully is generally a question of fact. Id.; Calderon, 809 F.3d at 130.

As the District Court of Maryland stated in Aviles-Cervantes v. Outside Unlimited, Inc., 276 F. Supp. 3d 480, 491 (D. Md. 2017), "because the question of whether a defendants' alleged FLSA violations were 'willful' is not an element of plaintiffs' claims but rather an anticipation of a limitations defense that the defendant may raise, plaintiffs do not need to allege specific facts that the defendant willfully violated the FLSA." (internal quotations omitted). Plaintiffs may bear the burden to prove willfulness but not at the motion to dismiss stage. Id. Accordingly, the court **DENIES** LGMC's motion to strike Plaintiffs' willfulness claim.

## IV.  CONCLUSION

For the foregoing reasons, the court will, by separate order, **GRANT in part** LGMC's motion to dismiss under Rule 12(b)(1) and remand the claims of Hardy, Finks, Bethel, Hendricks II, and Sanders II to the EEOC for proper resolution; construe LGMC's motion to dismiss under Rule 12(b)(6) as a motion for judgment on the pleadings and **GRANT it in part**; **GRANT in part** and **DENY in part** LGMC's motion for judgment on the pleadings; **DENY** LGMC's motion to strike; **GRANT** plaintiffs' motion to file a Second Amended Complaint; and **GRANT** plaintiffs' motion to file a Third Amended Complaint. An appropriate order will follow.

Entered: March 19, 2019.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

33